IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

FRANCO'S TRUCKING, A New Mexico
Limited Liability Co.   Case No.: 17-12017 j11

Debtor.

## MOTION FOR ENTRY OF ORDER APPROVING COMPROMISE REGARDING DEBTOR'S USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION OF CREDITORS HAVING CLAIMS AGAINST CASH COLLATERAL

Debtor, by and through its undersigned counsel, pursuant to Bankruptcy Rule 4001(d), requests approval of a settlement among Debtor and Texas Capital Services, LLC, ("TCS"), a creditor herein, New Mexico Taxation and Revenue Department ("NMTRD"), a creditor herein, and the Department of Treasury, Internal Revenue Department ("IRS"), a creditor herein, through their undersigned counsel regarding Debtor's limited use of cash collateral and for adequate protection of creditors having claims against cash collateral on the terms and conditions set forth in the Stipulated and Agreed Order Authorizing Debtor's Limited Use of Cash Collateral and for Adequate Protection Effective *nunc pro tunc* to August 3, 2017 through December 31, 2017 attached as Exhibit "1" hereto. In support of this Motion, Debtor states as follows:

1. Debtor filed this Chapter 11 bankruptcy on August 3, 2017.

2. Upon information and belief, Creditors herein are the only Creditors with any claims to Cash Collateral.

3. Debtor and Creditors have consented to Debtors use of cash collateral pursuant to the terms and conditions as described in the proposed Order attached as Exhibit 1 hereto.

4. Counsel for Texas Capital Services, LLC, New Mexico Taxation and Revenue

1 | P a g e

Department, and Internal Revenue Service have been contacted and consent to this Motion. The United States Trustee has also been contacted and consents hereto.

     5.    This Motion, Notice of Deadline to Object, the proposed Stipulated Order and Budget will be served pursuant to Bankruptcy Rule 4001 and all parties will be provided 14 days to object.

Wherefore, the Debtor respectfully requests that the Court grant this motion and enter the Order attached as Exhibit 1 hereto.

Respectfully Submitted,

*Electronically submitted 8.21.17*
Attorney for Debtor
P.O. Box 1479
Las Cruces, N.M. 88004
(575) 527-8600
(575) 527-1199 (fax)
trey@arvizulaw.com

CERTIFICATE OF SERVICE

I CERTIFY that the foregoing was electronically filed with the Court via the CM/ECF system. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on this 21st day of August, 2017.

Electronically filed
R. "Trey" Arvizu, III

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW MEXICO

In re:

FRANCO'S TRUCKING, A New Mexico
Limited Liability Co.                           Case No.: 17-12017 j11

    Debtor.

### STIPULATION AND AGREED ORDER AUTHORIZING
### DEBTOR'S LIMITED USE OF CASH COLLATERAL
### AND FOR ADEQUATE PROTECTION
### EFFECTIVE *NUNC PRO TUNC* TO AUGUST 3, 2017
### THROUGH DECEMBER 31, 2017

Franco's Trucking, a New Mexico Limited Liability Co. (the "Debtor"), Texas Capital Services, LLC, ("TCS"), a creditor herein, New Mexico Taxation and Revenue Department ("NMTRD"), a creditor herein, and the Department of Treasury, Internal Revenue Department ("IRS"), a creditor herein, by their undersigned counsel, have agreed to the terms and conditions of this Stipulation and Agreed Order Authorizing Debtor's Limited Use of Cash Collateral and for Adequate Protection (the "Cash Collateral Order").

### FACTUAL BACKGROUND

1.    The Debtor owns and operates a trucking company in Carlsbad, New Mexico which primarily services companies in the oil field. The Debtor employs approximately 25-30 truck drivers, shop employees and office personal at any one time. The Debtor is currently generating $100,000 to $120,000 per week in revenues.

**TCS** asserts it is a secured creditor of the Debtor with a perfected security interest and lien upon all of the Debtor's accounts, General Intangibles, Contract Rights, Deposit Accounts, Inventory and Proceeds per its recorded UCC filed with the New Mexico Secretary of State's office on July 13, 2015. TCS and the Debtor have a pre-petition recourse factoring arrangement

1

whereby the Debtor factors its receivables on a weekly basis. The amount of receivables outstanding at the time of the filing of the petition was $420,823.59. A second loan with a balance of $347,413.12 also exists between the Debtor and TCS. TCS asserts a priority position in all Cash Collateral of the Debtor for both loans.

**IRS** asserts it is a secured creditor with an approximate balance owed of $987,830.87 (secured amount $108,969.97 and priority amount $693,576.71) with filed tax liens in Eddy County of various dates subsequent to July 13, 2015. See Proof of Claim #2 filed in this case.

**NMTRD** asserts it is a secured creditor owed $629,954.81 (secured amount $476,060.97 and priority amount $141,952.43) with filed tax liens in Eddy County of various dates subsequent to July 13, 2015. See Proof of Claim #1 filed in this case.

**TCS, IRS and NMTRD,** for purposes of this Cash Collateral Order shall be collectively referred to as the "Secured Creditors." The Secured Creditors are believed to be the only entities with any interest in the Debtor's cash collateral. The Secured Creditors consent to the limited use of Cash Collateral according to the Budget attached hereto as Exhibit "A" *nunc pro tunc* pursuant to 11 U.S.C. §363(c)(2)(A) through the date of entry of this Cash Collateral Order.

2. The Debtor filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 3, 2017 (the "Petition Date") commencing this case (the "Case") and continues to operate its business, specifically the Trucking Company, as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors (a "Committee") has not been appointed in this Case, and no trustee (the "Trustee") has been appointed in this Case.

4. The Secured Creditors and the Debtor assert that the agreements and arrangements authorized in this Cash Collateral Order have been negotiated at arms-length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. TCS, NMTRD, IRS and the Debtor assert that they have acted in good faith (including, without limitation, as that term is used in Section 363 of the Bankruptcy Code and otherwise) in the negotiation and preparation of this Cash Collateral Order, have been represented by counsel, and intend to be and are bound by the terms of this Cash Collateral Order.

## CASH COLLATERAL

5. The Secured Creditors and the Debtor agree that all accounts receivable Collateral that are in the Debtor's and/or TCS's possession, custody or control, or in which the Debtor will obtain an interest during the pendency of the Case, and all other "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral"), are the Cash Collateral. TCS, NMTRD and the IRS agree solely for the purpose of this Cash Collateral Order that TCS has first priority perfected lien upon and security interests in the Cash Collateral.

6. The Secured Creditors do not consent to the Debtor's use of Cash Collateral except in strict accordance with the terms and conditions contained in this Cash Collateral Order, including the Budget attached Exhibit "A," as defined herein.

7. The Debtor has requested that TCS, NMTRD and the IRS permit the use of Cash Collateral in order to provide funds to be used solely for such purposes set forth in the Budget in order to avoid immediate and irreparable harm to the Debtor's estate which will occur if this Cash Collateral Order is not approved. Without the use of Cash Collateral, the Debtor asserts that it will be unable to retain or pay employees, to maintain and operate its trucking

3

company, or to perform any of the tasks which the Debtor believes are necessary to maximize the value of its assets.

8. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtor asserts that the use of Cash Collateral by the Debtor is necessary to preserve the estate, and will avoid immediate and irreparable harm to the Debtor, its estate and assets, prior to the expiration of the period specified herein.

**IT IS THEREFORE ORDERED:**

### USE OF CASH COLLATERAL AND DIP ACCOUNT

9. The Debtor is hereby authorized on a limited basis to use Cash Collateral only as provided in strict accordance with the terms and conditions provided in this Cash Collateral Order.

10. The Debtor may use Cash Collateral on an interim basis only to pay for the specified purposes and for no more than the specified amounts set forth in the budget attached hereto as Exhibit "A" (the "Budget") for the period from August 3, 2017 to December 31, 2017. In the event that the Debtor's actual expenditures for any specified purpose in the Budget are less than the amount set forth in the Budget ("Budget Surplus"), the difference between the actual expenditure and the amount set forth in the Budget may be used to cover any reasonable specified purpose actual expense amount that is more than the budgeted amount without prior approval from the Secured Creditors. The Budget Surplus may not be used by the Debtor for any other unspecified purpose without prior written consent of the creditors herein.

11. In addition to the permitted expenditures in the Budget, the Secured Creditors consent to the payment of all amounts due to the Office of the United States Trustee under 28

U.S.C. § 1930(a)(6). The Debtor shall deposit all unused Cash Collateral in the DIP Account, as defined below.

12. On or before August 18, 2017, the Debtor shall open and designate a separate bank account (and accounts for taxes and payroll) to reflect the fact that the Debtor is a Debtor in Possession (the "DIP Account"), as required by the United States Trustee's guidelines applicable to this Case. The Debtor shall establish the DIP Account at a depository bank approved by the United States Trustee and acceptable to the creditors herein. The Debtor may only use the DIP Account(s) subject to the terms and conditions of this Cash Collateral Order.

13. The Debtor shall close all other bank accounts at all other institutions, wherever they may be, and shall use only the DIP Account(s).

## ADEQUATE PROTECTION

14. As adequate protection of the Secured Creditors' interest in the Pre-Petition Collateral and the Cash Collateral through December 31, Debtor shall make monthly adequate protection payments to in the amount of **$10,000.00 to TCS, $5,000.00 to NMTRD and $5,000.00 to IRS** on August 31, 2017, September 30, 2017, October 31, 2017, November 30, 2017 and December 31, 2017 (the "Adequate Protection Payments"). Each will apply the Adequate Protection Payments to the Indebtedness as permitted by the Loan Documents for TCS and as permitted by state or federal law for NMTRD and IRS.

15. As further adequate protection of each creditor's interest in each creditor's Pre-Petition Collateral and Cash Collateral, the Debtor hereby grants the Secured Creditors, effective as of the Petition Date, replacement liens upon and security interests in all Pre-Petition Collateral and collateral acquired by or in the possession of the Debtor post-petition. Such replacement liens are granted to the same extent, validity and priority of each creditor's liens upon the Pre-

Petition Collateral as of the Petition Date. The post-petition liens are only valid to the extent they were valid pre-petition.

16. The Secured Creditors and the Debtor are hereby authorized to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements as the creditors may require as evidence of and for the protection of the Collateral and Cash Collateral, or which may be otherwise deemed necessary by the parties to effectuate the terms and conditions of this Cash Collateral Order, including, without limitation, the filing of any financing statements, amendments, or other notices evidencing perfection of the creditors' security interest in any collateral granted by the Debtor; provided, however, all replacement liens are deemed perfected without further filing or recording under any state or federal law, and such perfection shall continue notwithstanding conversion of this case.

17. All of the terms and provisions of this Cash Collateral Order, including but not limited to the security interests and liens created and perfected hereby, shall be binding upon the Debtor and any subsequently appointed trustee either under Chapter 7 or Chapter 11 of the Bankruptcy Code.

**COLLATERAL INSURANCE,
TAXES AND TAX DEPOSITS**

18. The Debtor shall continue to maintain, with financially sound and reputable insurance companies, insurance for all estate property requiring insurance protection. In the event that the insurance coverage lapses, is cancelled for any reason or otherwise ceases to exist, the Debtor agrees to immediately cease and desist the usage and operation of any equipment, vehicles and trucks and trailers until such coverage is reinstated or other insurance coverage is secured.

19. The Debtor shall pay on a current basis all post petition taxes, including without limitation, all income taxes, payroll taxes, and real property taxes, if any.

**REPORTING REQUIREMENTS**

20. Commencing on September 21, 2017 and continuing on the twenty-first (21st) day of each month thereafter, the Debtor agrees to file monthly operating reports (that comply with the United States Trustee's guidelines and included copies of all cancelled checks presented during the reporting period), monthly cash flow statements, monthly profit and loss statements, and balance sheet.

**EVENTS OF DEFAULT**

21. The occurrence of any of the following shall constitute an event of default under this Cash Collateral Order: (a) any violation or breach of any of the terms of this Cash Collateral Order, including the failure of the Debtor to use the Cash Collateral in strict compliance with this Cash Collateral Order, (b) the maturity, termination, expiration, or non-renewal of this Cash Collateral Order as provided for herein, (c) conversion of the Case to a case under Chapter 7 of the Bankruptcy Code, (d) the appointment of a Chapter 11 Trustee in the Case, (e) the dismissal of the Case, (f) the discontinuation of the Debtor's business or the issuance of an order for the Debtor to discontinue its business, or (g) this Cash Collateral Order does not become a final order on or before August 31, 2017 (any of the foregoing events of default being referred to in this Cash Collateral Order, individually, as an "Event of Default" and, collectively, as "Events of Default"). Upon an Event of Default, the creditors may file a notice with the Court declaring such Event of Default (the "Default Notice").

22. Upon the occurrence of any Event of Default and the filing of the Default Notice (provided, however, that a Default Notice is not required with respect to an Event of

Default under (b) or (e) or (g) in the preceding paragraph) the Debtor shall have ten (10) days from the date any Default Notice is filed with the Court to cure the default. In the event that a Default Notice is filed and not cured or if the Debtor has three such cured defaults during the term of this Cash Collateral Order, the parties shall be entitled to a hearing on the alleged default on short notice, which may result in the end of the use of cash collateral or other sanctions.

23. The parties agree that nothing herein shall be deemed or construed to waive, limit or modify the rights of any party or the Debtor to seek additional relief in this bankruptcy case in accordance with any provision of the Bankruptcy Code or applicable law including determining the validity of the secured status of the Secured Creditors and the priorities of each of the Secured Creditors.

24. Upon entry of this Cash Collateral Order, Debtor's court ordered authority to use Cash Collateral and this Cash Collateral Order shall be effective as of the Petition Date to and including the earlier of the occurrence of an Event of Default or December 31, 2017, at which time all of the Debtor's authority to use Cash Collateral shall terminate, unless otherwise stipulated to by the creditors herein and the Debtor in accordance with the terms of this Cash Collateral Order, or otherwise ordered by this Court.

25. Upon agreement by all the Secured Creditors of this Cash Collateral Order, the Debtor will file a Motion to Approve Compromise (the "Motion") pursuant to Bankruptcy Rule 4001(d). The Motion, a copy of this Cash Collateral Order and Notice of Deadline to Object (the "Notice") shall be served by the Debtor upon all required parties in accordance with Bankruptcy Rule 4001(d)(1)(c). Objections to the Motion shall be filed and served upon counsel to the Debtor and counsel for the creditors herein within fourteen (14) days after service of the Motion, proposed Cash Collateral Order and Notice (the "Objection Deadline") pursuant to Bankruptcy

Rule 4001(d)(2). If, and only to the extent that, an objection to this Cash Collateral Order is filed on or before the Objection Deadline, the Court will conduct a final hearing on the use of cash collateral at on short notice in the United States Bankruptcy Court for the District of New Mexico (the "Hearing"). Absent a timely objection filed on or before the Objection Deadline, the Debtor will submit this Cash Collateral Order and it shall become a final order of this Court (the "Final Cash Collateral Order") without the Hearing, further notice, or order of this Court.

**\*\*END OF ORDER\*\***

Submitted:

*/s/ Submitted  8.xx.17*
R. "Trey" Arvizu, III
Attorney for Debtor
P.O. Box 1479
Las Cruces, NM  88004
(575)527-8600
(575)527-1199 (fax)
trey@arvizulaw.com

Approved:

HECTOR H. BALDERAS, Attorney General
Of the State of New Mexico

*Approved via email  8.21.17*
James C. Jacobsen
Assistant Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505)717-3527 (505)318-1050 (fax)

*Approved via email  8.17.17*
Dax Voss
Attorney for Texas Capital Services, LLC

Lubbock, TX
(806)796-4054
dvoss@lubbocklawfirm.com

JAMES D. TIERNEY

Acting United States Attorney

*Approved via email 8.17.17*
MANUEL LUCERO
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1467
Attorney for IRS

**SAMUEL K. CROCKER**

United States Trustee

*Approved via email 8.17.17*
LEONARD K. MARTINEZ-METZGAR
Trial Attorney
Office of U. S. Trustee
P. O. Box 608
Albuquerque, NM 87103
(505) 248-6548
Leonard.Martinez-Metzgar@usdoj.gov

**Franco Trucking, LLC**
**Projected Budget**
**August through September, 2017**

| | 18th - 25th | 26th - 1st | 2nd - 8th | 9th - 15th | 16th - 22nd | 23rd - 30th | Total |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| Fees Earned - Note 1 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $600,000.00 |
| **Total Revenue** | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $600,000.00 |
| **Expenses** | | | | | | | |
| Advertising/Promotional | $134.00 | $134.00 | $134.00 | $134.00 | $134.00 | $134.00 | $804.00 |
| Bank Service Charges | $0.00 | $72.00 | $0.00 | $0.00 | $0.00 | $72.00 | $144.00 |
| Donations/Contributions | $46.00 | $46.00 | $46.00 | $46.00 | $46.00 | $46.00 | $276.00 |
| Computer & Internet | $156.00 | $156.00 | $156.00 | $156.00 | $156.00 | $156.00 | $936.00 |
| Disposal Fees | $2,186.00 | $2,186.00 | $2,186.00 | $2,186.00 | $2,186.00 | $2,186.00 | $13,116.00 |
| Drug Testing | $32.00 | $32.00 | $32.00 | $32.00 | $32.00 | $32.00 | $192.00 |
| Employee Background Check | $29.00 | $29.00 | $29.00 | $29.00 | $29.00 | $29.00 | $174.00 |
| Fuel | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $8,000.00 | $48,000.00 |
| General Operating Expenses | $2,245.00 | $2,245.00 | $2,245.00 | $2,245.00 | $2,245.00 | $2,245.00 | $13,470.00 |
| Gross Receipts Taxes - Note 2 | $38,400.00 | $0.00 | $0.00 | $0.00 | $0.00 | $38,400.00 | $76,800.00 |
| Insurance Expense | $0.00 | $21,236.00 | $0.00 | $0.00 | $0.00 | $21,236.00 | $42,472.00 |
| Licensing & Registration Fees | $0.00 | $240.00 | $0.00 | $0.00 | $0.00 | $240.00 | $480.00 |
| Meals & Entertainment | $893.00 | $893.00 | $893.00 | $893.00 | $893.00 | $893.00 | $5,358.00 |
| Misc. Expense | $31.00 | $31.00 | $31.00 | $31.00 | $31.00 | $31.00 | $186.00 |
| Office Supplies | $162.00 | $162.00 | $162.00 | $162.00 | $162.00 | $162.00 | $972.00 |
| Net Weekly Payroll | $26,000.00 | $26,000.00 | $26,000.00 | $26,000.00 | $26,000.00 | $26,000.00 | $156,000.00 |
| PO Box and Postage | $0.00 | $76.00 | $0.00 | $0.00 | $0.00 | $152.00 | $228.00 |
| Professional Fees | $0.00 | $1,200.00 | $0.00 | $0.00 | $0.00 | $1,200.00 | $2,400.00 |
| Rent | $0.00 | $0.00 | $2,010.00 | $0.00 | $0.00 | $0.00 | $2,010.00 |
| Repair & Maintenance -Copier | $0.00 | $32.00 | $0.00 | $0.00 | $0.00 | $32.00 | $64.00 |
| Repair & Maintenance -Bldg | $281.00 | $281.00 | $281.00 | $281.00 | $281.00 | $281.00 | $1,686.00 |
| Repair & Maintenance - Trucks | $12,466.00 | $12,466.00 | $12,466.00 | $12,466.00 | $12,466.00 | $12,466.00 | $74,796.00 |
| Safety Equip and Training | $626.00 | $626.00 | $626.00 | $626.00 | $626.00 | $626.00 | $3,756.00 |
| Security System | $0.00 | $96.00 | $0.00 | $0.00 | $0.00 | $96.00 | $192.00 |
| Shop Supplies | $663.00 | $663.00 | $663.00 | $663.00 | $663.00 | $663.00 | $3,978.00 |
| Payroll Taxes | $13,006.00 | $13,006.00 | $13,006.00 | $13,006.00 | $13,006.00 | $13,006.00 | $78,036.00 |
| Telephone Expense | $0.00 | $412.00 | $0.00 | $0.00 | $0.00 | $412.00 | $824.00 |
| Truck Radio Communications | $0.00 | $596.00 | $0.00 | $0.00 | $0.00 | $596.00 | $1,192.00 |
| Utilities | $0.00 | $832.00 | $0.00 | $0.00 | $0.00 | $832.00 | $1,664.00 |
| **Bk Related Expenses** | | | | | | | $0.00 |
| UST Fees | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Legal - Retainer $30,000 - Note 4 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Adequate Protection - TCS - Note 3 | $0.00 | $10,000.00 | $0.00 | $0.00 | $0.00 | $10,000.00 | $20,000.00 |
| Adequate Protection - NMTRD | $0.00 | $5,000.00 | $0.00 | $0.00 | $0.00 | $5,000.00 | $10,000.00 |
| Adequate Protection - IRS | $0.00 | $5,000.00 | $0.00 | $0.00 | $0.00 | $5,000.00 | $10,000.00 |
| **TOTAL DISBURSEMENTS** | $105,356.00 | $111,748.00 | $68,966.00 | $66,956.00 | $66,956.00 | $150,224.00 | $570,206.00 |
| **NET INCOME** | -$5,356.00 | -$11,748.00 | $31,034.00 | $33,044.00 | $33,044.00 | -$50,224.00 | $29,794.00 |

1  Amount based on average revenues YTD through 7/31/17.  $3,400,000 / 7 mos. = $485,714.29/ 4wks = $121,428.57

2  Based on 8% of Monthly Revenues

3  Negotiated to Approx 3% of Note

4  Counsel received $25,000 retainer from levied funds.  No further payments necessary at this time

9

**Franco Trucking, LLC**
**Monthly Projected Budget**
**October 2017 - December 2017**

| | October | November | December | Total |
|---|---|---|---|---|
| **Income** | | | | |
| Fees Earned - Note 1 | $400,000.00 | $400,000.00 | $400,000.00 | $1,200,000.00 |
| **Total Revenue** | $400,000.00 | $400,000.00 | $400,000.00 | $1,200,000.00 |
| **Expenses** | | | | |
| Advertising/Promotional | $536.00 | $536.00 | $536.00 | $1,608.00 |
| Bank Service Charges | $72.00 | $72.00 | $72.00 | $216.00 |
| Donations/Contributions | $184.00 | $184.00 | $184.00 | $552.00 |
| Computer & Internet | $624.00 | $624.00 | $624.00 | $1,872.00 |
| Disposal Fees | $8,744.00 | $8,744.00 | $8,744.00 | $26,232.00 |
| Drug Testing | $128.00 | $128.00 | $128.00 | $384.00 |
| Employee Background Check | $116.00 | $116.00 | $116.00 | $348.00 |
| Fuel | $32,000.00 | $32,000.00 | $32,000.00 | $96,000.00 |
| General Operating Expenses | $8,980.00 | $8,980.00 | $8,980.00 | $26,940.00 |
| Gross Receipts Taxes - Note 2 | $26,000.00 | $26,000.00 | $26,000.00 | $78,000.00 |
| Insurance Expense | $21,236.00 | $21,236.00 | $21,236.00 | $63,708.00 |
| Licensing & Registration Fees | $240.00 | $240.00 | $240.00 | $720.00 |
| Meals & Entertainment | $3,572.00 | $3,572.00 | $3,572.00 | $10,716.00 |
| Misc. Expense | $124.00 | $124.00 | $124.00 | $372.00 |
| Office Supplies | $648.00 | $648.00 | $648.00 | $1,944.00 |
| Net Monthly Payroll | $104,000.00 | $104,000.00 | $104,000.00 | $312,000.00 |
| PO Box and Postage | $152.00 | $152.00 | $152.00 | $456.00 |
| Professional Fees | $4,408.00 | $4,408.00 | $4,408.00 | $13,224.00 |
| Rent | $2,010.00 | $2,010.00 | $2,010.00 | $6,030.00 |
| Repair & Maintenance -Copier | $32.00 | $32.00 | $32.00 | $96.00 |
| Repair & Maintenance -Bldg | $1,124.00 | $1,124.00 | $1,124.00 | $3,372.00 |
| Repair & Maintenance - Trucks | $49,864.00 | $49,864.00 | $49,864.00 | $149,592.00 |
| Safety Equip and Training | $2,504.00 | $2,504.00 | $2,504.00 | $7,512.00 |
| Security System | $96.00 | $96.00 | $96.00 | $288.00 |
| Shop Supplies | $2,652.00 | $2,652.00 | $2,652.00 | $7,956.00 |
| Payroll Taxes | $52,024.00 | $52,024.00 | $52,024.00 | $156,072.00 |
| Telephone Expense | $412.00 | $412.00 | $412.00 | $1,236.00 |
| Truck Radio Communications | $1,192.00 | $1,192.00 | $1,192.00 | $3,576.00 |
| Utilities | $836.00 | $836.00 | $836.00 | $2,508.00 |
| **Bk Related Expenses** | | | | |
| UST Fees | $4,875.00 | $0.00 | $0.00 | $4,875.00 |
| Legal | $0.00 | $0.00 | $0.00 | $0.00 |
| Adequate Protection - TCS - Note 3 | $10,000.00 | $10,000.00 | $10,000.00 | $30,000.00 |
| Adequate Protection - NMTRD | $5,000.00 | $5,000.00 | $5,000.00 | $15,000.00 |
| Adequate Protection - IRS | $5,000.00 | $5,000.00 | $5,000.00 | $15,000.00 |
| **TOTAL DISBURSEMENTS** | $349,385.00 | $344,510.00 | $344,510.00 | $1,038,405.00 |
| **NET INCOME** | $50,615.00 | $55,490.00 | $55,490.00 | $161,595.00 |

1  Amount based on average revenues YTD through 7/31/17.  $3,400,000 / 7 mos. = $485,714.29/ 4wks = $121,428.57
**2 Based on 8% of Revenues**
**3 Negotiated to Approx 3% of Note**
**4 Counsel received $25,000 retainer from levied funds.  No further payments necessary at this time**